UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NHAN HOANG TRUONG, | No.  1:26-cv-00449 DC CSK |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| TONYA ANDREWS, | |
| Respondent. | |

Petitioner, an immigration detainee, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner is a native and citizen of Vietnam.  On July 20, 1998, petitioner was admitted to the United States as a lawful permanent resident.  On September 1, 2010, petitioner was ordered removed to Vietnam by an immigration judge, and petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE").  After the government was unable to remove petitioner to Vietnam, he was released under an order of supervision.  On October 29, 2025, petitioner was re-detained by ICE.  This habeas action concerns petitioner's October 29, 2025 re-detention.  For the following reasons, this Court recommends that the petition be granted and that petitioner be released.

///

---

[1]  Petitioner paid the filing fee and is proceeding without counsel.  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.    FACTUAL BACKGROUND[2]

Petitioner was born in the Philippines in a refugee camp on April 20, 1988. (ECF No. 1 at 9; ECF No. 8-2 at 17, 21.) Government documents indicate that petitioner is a citizen of Vietnam. (ECF No. 8-2 at 7; ECF No. 8-3 at 5, 6.) On July 20, 1988, petitioner was admitted into the United States as a lawful permanent resident. (ECF No. 8-3 at 6, 7.) After petitioner was convicted of various marijuana-related controlled substances violations, on July 25, 2010, a Notice to Appear was issued to petitioner charging petitioner as subject to removal. (See (ECF No. 8-1 at ¶¶ 6-8; ECF No. 8-2 at 5-7.) On September 1, 2010, an immigration judge ordered petitioner removed to Vietnam. (ECF No. 8-2 at 11; ECF No. 8-3 at 4.) Petitioner was detained by ICE.

Petitioner states that after the immigration judge ordered him removed to Vietnam in 2010, Vietnam did not accept him. (ECF No. 1 at 9.) After detaining petitioner for three months in 2010 in an ICE detention facility in Florence, Arizona, ICE released petitioner under an Order of Supervision. (Id.) "On February 2, 2012, Petitioner was convicted of misconduct involving weapons and narcotic drug possession/use." (ECF No. 8-1 at ¶ 11.) In 2015, ICE detained petitioner a second time for three months at the detention facility in Florence, Arizona. (ECF No. 1 at 9.) Vietnam again did not issue travel documents for petitioner. (Id.) ICE released petitioner under an Order of Supervision. (Id.) On July 25, 2018, petitioner was convicted of "possession of a dangerous drug and possession/use of a narcotic drug." (Id., ¶ 13.) In 2020, ICE detained petitioner a third time for three months. (ECF No. 1 at 9.) Vietnam again did not issue travel documents for petitioner. (Id.) Petitioner was released under an Order of Supervision. (Id.) On June 19, 2021, petitioner was convicted of drug possession. (ECF No. 8-1 at ¶ 14.) On November 1, 2021, petitioner was convicted of "stolen vehicle." (ECF No. 8-1 at ¶ 15.) On December 7, 2022, petitioner was convicted of "conspiracy to commit a crime, drug possession

---

[2] The Court summarizes petitioner's detention history by ICE and criminal history as presented by the parties. In a verified declaration attached to the petition, petitioner provides his past detention by ICE (ECF No. 1 at 9), which Respondent does not dispute (see ECF No. 8). Respondent provides petitioner's criminal history through a Detention Officer's declaration (ECF No. 8-1 at ¶¶ 6-8, 10-16), and petitioner did not file a reply or traverse responding to or contesting respondent's assertions regarding his criminal history (see Docket).

for sale, theft and human trafficking." (Id., ¶ 16.)

On October 29, 2025, petitioner reported to the Maricopa County Adult Probation Office in Glendale, Arizona where he was taken into ICE custody. (ECF No. 8-1 at ¶ 17.) He was transferred from state custody into ICE custody. (Id., ¶ 21.)

On December 2, 2025, ICE applied for a travel document for petitioner with the Consul General of Vietnam.[3] (ECF No. 8-1 at ¶ 18; ECF No. 8-2 at 2-4.)

On January 4, 2026, petitioner was transferred from the ICE Florence Correctional Center in Arizona to the ICE Golden State Annex facility in California. (ECF No. 8-1 at ¶ 20.)

## II.    PROCEDURAL BACKGROUND

On January 20, 2026, petitioner filed his petition for writ of habeas corpus in this district raising two claims for relief. (ECF No. 1.) In claim one, petitioner argues that his continued detention violates the due process clause of the Fifth Amendment. (Id. at 6.) In claim two, petitioner argues that his continued detention violates the due process clause of the Fifth Amendment, 8 C.F.R. § 241.13 and the Administrative Procedures Act. (Id.) On January 27, 2026, this Court directed respondent to file a response to the petition within seven days and ordered that petitioner may file a reply within ten days after being served with the response. (ECF No. 3.) On February 3, 2026, respondent filed a motion for a three-day extension of time to file the answer. (ECF No. 6.) On February 6, 2026, respondent filed an answer. (ECF No. 8.) Good cause appearing, the motion for extension of time is granted and the answer is deemed timely filed. Petitioner did not file a reply to the answer.

## III.   LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in

---

[3] The deportation officer also claims that a request for travel documents for petitioner was submitted on December 4, 2025 by a different officer named Linda Dreiwitz. (ECF No. 8-1 at ¶ 23.) This appears incorrect and is not supported by respondent's own records, which includes a copy of a December 2, 2025 travel document request by deportation officer Miguel Martinez. (ECF No. 8-2 at 2.)

3

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.   DISCUSSION

### A.   Claims Alleging Violation of Due Process and 8 C.F.R. § 241.13

In claims one and two, petitioner argues that his re-detention violates his right to due process and 8 C.F.R. § 241.13. (ECF No. 1 at 6.) Because these claims require examination of whether the government followed its own regulations that set out procedures for revoking release, procedures that protect important due process rights, the Court discusses these claims together. See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Respondent first argues that petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(2). (ECF No. 8 at 2-3.) Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). Here, it is clear that the 90-day removal period has long passed since the September 1, 2010 removal order by the immigration judge, which was

4

not appealed.  (See ECF No. 8-3 at 4 (immigration judge order indicating appeal waived).)  In addition, petitioner was detained for three months in 2010 after he was ordered removed, and he was released under an Order of Supervision after ICE was unable to remove petitioner to Vietnam.

Respondent does not dispute that at the time of petitioner's October 29, 2025 re-detention, petitioner was on release under an Order of Supervision.  (See ECF No. 1 at 9; ECF No. 8.)  Such a release is made if the government "determines that the alien would not pose a danger to the public or a risk of flight."  8 C.F.R. § 241.3(b).  A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).

Respondent argues that the petition should be denied because petitioner has not shown that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  (ECF No. 8 at 3-4).  The regulations at 8 C.F.R. § 241.13(i) indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed."  Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future.").  As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications."  Escalante, 2025 WL 2206113, at *3.  Therefore, the Court must determine whether respondent has met its burden to show a changed circumstance indicating a significant likelihood of removal.

In the answer, respondent argues that there is a sufficient basis to believe that petitioner's

removal from the United States to Vietnam will occur in the next three months.  (ECF No. 8 at 3.)  In support of this argument, respondent submitted a declaration by a deportation officer who states that ICE applied for a travel document for petitioner on December 2, 2025, and the officer is "informed and believe[s] that Vietnam will issue Petitioner's travel documents within the next three months."  (ECF No. 8-1 at ¶¶ 18, 24; ECF No. 8-2.)  The deportation officer states, "[i]n the past six (6) months, I am informed that ICE has scheduled monthly flights to Vietnam, and the government of Vietnam has issued travel documents to similarly situated detained individuals in the Fresno sub office area of responsibility alone.  I am informed and believe that Vietnam has issued hundreds of travel documents for detained nationals subject to final orders of removal in the past six (6) months."  (ECF No. 8-1 at ¶¶ 25-26.)

Re-detention is permissible only if ICE can show there is a significant likelihood of removal in the reasonably foreseeable future.  See 8 C.F.R. § 241.13(i).  For the following reasons, this Court finds that ICE re-detained petitioner on October 29, 2025 without making the required showing and without complying with its own regulations.  "ICE, like any agency, 'has the duty to follow its own regulations.'"  Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265-68 (1954).  Section 241.13(i)(2) requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked.  See Nguyen v. Andrews, 2026 WL 263058, at *4 (E.D. Cal. Feb. 2, 2026), report and recommendation adopted, 2026 WL 412183 (E.D. Cal. Feb. 13, 2026) (citing 8 C.F.R. § 241.13(i)(2)); Nguyen v. Charles, 2025 WL 3492117, at *3 (E.D. Cal. Dec. 4, 2025) ("The 'on account of' language [in § 241.13(i)(2)] means that the 'changed circumstances' are a prerequisite to revocation.") (quoting 8 C.F.R. § 241.13(i)(2)); Duong v. Charles, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (stating that

"§ 241.13(i)(2) requires that this determination is made before the removable [noncitizen] has had his release revoked"); Sphabmixay v. Noem; 2025 WL 3034071, at *2 (S.D. Cal. Oct. 3, 2025).

Here, the record does not show that a changed-circumstance determination was made at or before petitioner's re-detention on October 29, 2025. As discussed above, travel documents for petitioner were not requested from Vietnam until December 2025, over a month after petitioner was re-detained. To the extent the changed circumstance could be based on travel documents requested after petitioner's re-detention, petitioner's re-detention violates § 241.13(i)(2) because the travel document request (the changed circumstance) was made after petitioner was re-detained on October 29, 2025. See Vo v. Albarran, 2026 WL 177796, at *2 (E.D. Cal. Jan. 22, 2026) ("the fact that Respondents did not submit a travel document request to Vietnam until three weeks after Petitioner's re-detention suggests a lack of changed circumstances to justify Petitioner's re-detention."); Liu v. Carter, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("[T]he fact that officials did not even request documentation for petitioner from the Chinese authorities until May ... undercuts any suggestion that petitioner's release was in fact revoked in January because the likelihood of obtaining that documentation had increased to any material degree."). In addition, respondent fails to address why the government failed to obtain a travel document in the past and why it is more likely to obtain a travel document now. See Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around.").

Further, respondent does not identify what considerations the government of Vietnam might take into account when deciding whether to issue a travel document and does not explain whether the government of Vietnam will look favorably on petitioner's case. See Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025) (citing Liu v. Carter, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely)). The phrase "significant likelihood" requires

something more than a mere possibility that removal will occur.  Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future."  Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).  The deportation officer's statements that he is informed and believes that the government of Vietnam has issued travel documents to similarly situated detained individuals and that Vietnam has issued hundreds of travel documents for detained nationals subject to final orders of removal in the past six months do not demonstrate that petitioner's removal is significantly likely in the reasonably foreseeable future.  Other courts have found similar statements insufficient to demonstrate a significant likelihood that petitioner will be removed in the reasonably foreseeable future.  See Shameyan v. Bondi, 2026 WL 330684, at *6 (C.D. Cal. Feb. 5. 2026) (finding deportation officer's "assertion that ICE 'has had good success at receiving travel document[s] for citizens of Armenia with final removal orders,' and that it 'expects to receive' Petitioner's travel documents fails to articulate the basis for why changed circumstances exists for Petitioner.").

In addition, when revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)."  Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025) (emphasis in original).  8 C.F.R. § 241.13(i)(3) requires a prompt interview following re-detention:  "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision."  Petitioner claims that after his detention on October 29, 2025, he was not given an informal interview by an agent notifying petitioner that his Order of Supervision was being revoked and was not notified of the reasons behind the revocation of his supervision, in violation of his due

8

process rights and 8 C.F.R. § 241.13.  (See ECF No. 1 at 9.)  Respondent does not contest these allegations or respond to the claim that it violated its own regulation.  (See ECF No. 8.)

The Court finds that the government violated the government's own regulation, 8 C.F.R. § 241.13.  Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  Id.  Respondent does not assert or present any evidence that petitioner was granted an informal interview or provided with an "opportunity to respond to the reasons for revocation," as required by 8 C.F.R. § 241.13(i)(3).  (See ECF Nos. 8, 8-1, 8-2, 8-3.)  Respondent's failure to provide petitioner with a prompt interview following his re-detention violated 8 C.F.R. § 241.13(i)(3).[4]

Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'"  Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

This Court analyzes petitioner's due process claim "in two steps: the first asks whether

---

[4]  Petitioner is subject to a final order of removal.  (See ECF No. 8-2 at 11.)  The government may revoke petitioner's supervision and remove petitioner, but must do so lawfully, following the requirements of the Constitution and its own regulations.  It has failed to do so here.  The Court notes that this case is in contrast to cases where the government has followed its regulations for revoking supervision for noncitizens like petitioner because in those cases, the government provides sufficient details about its efforts, including documentation of written notice provided to the noncitizen describing the changed circumstances before re-detention, information regarding the informal interview provided after re-detention, and a copy of actual travel documents obtained.  See, e.g., Xiong v. Wofford, 2026 WL 177739, at *2-3, 5 (E.D. Cal. Jan. 22, 2026).

there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection.  See Sanchez v. LaRose, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025).  These protections include at least notice and an opportunity to be heard regarding the revocation.  Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it.").  In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation.  See 2025 WL 3240808, at *5 (S.D. Cal. Nov. 20, 2025).  Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient.  See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.").  A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A., 2025 WL 2533673, at *10.

While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low.  See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).  Respondent identifies no reason why an informal interview "to afford the alien an opportunity to respond to the reasons for revocation

10

stated in the notification" was not provided to petitioner as required by their own regulations.  See 8 C.F.R. § 241.13(i)(3).

For the reasons above, this Court recommends that the petition be granted as to claims one and two alleging that petitioner's re-detention is unlawful because the government failed to demonstrate a significant likelihood of petitioner's removal to Vietnam in the reasonably foreseeable future, and because the government failed to comply with its own regulations regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).[5]

**B.      Petitioner's Other Ground for Relief**

In light of the Court's recommendation that petitioner's requested relief be granted on two separate grounds (violation of due process and 8 C.F.R.§ 241.13(i)), the Court need not address the portion of petitioner's second claim alleging violation of the Administrative Procedures Act.

**C.      Remedy**

Based on the recommendation that the petition be granted as to the claims alleging violation of due process and 8 C.F.R. § 241.13(i), this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy.  See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").  Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release pursuant to an order of supervision prior to his re-detention on October 29, 2025.

**V.      CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that respondent's motion for extension of time (ECF No. 6) is granted.

IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be GRANTED as to claims one and two alleging violations of due process and 8 C.F.R. § 241.13(i).

---

[5]   Where the Court has resolved the due process and regulatory violation claims, the Court declines to address the parties' arguments regarding the total length of time petitioner has been in immigration custody since 2010.  (See ECF No. 1 at 9; ECF No. 8 at 1-2.)

2. Petitioner Nhan Hoang Truong be immediately released from ICE custody under the same conditions he was previously released under the Order of Supervision immediately prior to his October 29, 2025 re-detention. Respondent be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondent has custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent be ordered to return those to petitioner at the time of release. Respondent be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.

3. Within **seven days** of the adoption of these findings and recommendations, respondent be ordered to file a status report addressing petitioner's status.

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 2, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Truo449.157/2

12